**2026 UT App 120**

# THE UTAH COURT OF APPEALS

JERRY GALLEGOS,
Appellee and Cross-appellant,
*v.*
BREWSKI'S ON HISTORIC 25TH STREET,
Appellant and Cross-appellee.

Opinion
No. 20240219-CA
Filed August 6, 2026

Second District Court, Ogden Department
The Honorable Reuben Renstrom
The Honorable Craig Hall
No. 200902686

Bruce C. Burt, Attorney for Appellant and
Cross-appellee

Robert W. Gibbons and Lindy W. Hamilton,
Attorneys for Appellee and Cross-appellant

JUDGE AMY J. OLIVER authored this Opinion, in which JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred as to Parts I, II, III.A.2 and III.C. JUDGE GREGORY K. ORME also concurred as to Part III.B. JUDGE RYAN M. HARRIS authored a separate opinion, authoring the Opinion of the Court as to the issue in Part III.A.1, in which JUDGE GREGORY K. ORME concurred, and dissenting as to Part III.B.

OLIVER, Judge:

¶1　Jerry Gallegos sued Brewski's on Historic 25th Street (Brewski's), and others, for injuries he suffered when a Brewski's employee forcibly removed him from the business's premises. During the litigation, the district court sanctioned Brewski's for its spoliation of video evidence. The district court also sanctioned Gallegos after his counsel improperly terminated the deposition

of one of his expert witnesses who had come to the deposition unprepared. Brewski's eventually moved for summary judgment on the ground that Gallegos could not prove his claims for negligence and negligent hiring, training, and supervision without expert testimony. The district court granted the motion, dismissing both of Gallegos's claims against Brewski's.

¶2 Despite prevailing on summary judgment, Brewski's filed this appeal challenging the district court's spoliation sanction. Gallegos then cross-appealed, raising numerous challenges to the district court's sanctions and summary judgment rulings. For the reasons discussed below, we affirm the district court's sanctions rulings but we reverse the grant of summary judgment on Gallegos's negligent hiring, training, and supervision claim. A majority of the court also reverses the grant of summary judgment on the negligence claim.

BACKGROUND[1]

*The Incident and Lawsuit*

¶3 In January 2019, Gallegos went to Brewski's, a local bar, with some friends. Later that night, in an attempt to defend his friend who had been asked to leave the bar, Gallegos began speaking loudly to the bartender from the table where he was sitting. The bartender approached Gallegos at his table to speak to him. As the conversation intensified, a bouncer employed by Brewski's (Bouncer) walked over and stood next to Gallegos's table. Bouncer then "grabbed . . . Gallegos from behind and proceeded to the front door to take him outside." Bouncer put him

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (cleaned up).

in a "full nelson"[2] headlock, with Gallegos's arms above his head, and then carried and dragged Gallegos to the doorway. Gallegos buckled his knees as the pair approached the door, causing them both to lose their balance as Bouncer pushed Gallegos out the door. Gallegos subsequently fell, and he suffered permanent injury to his right shoulder as a result of the fall.

¶4 Gallegos filed suit against Brewski's, One Commerce Street, and Harwood Properties, LLC.[3] He alleged two claims of negligence against Brewski's, one for vicarious liability for its employees' negligence and one for direct liability based on the negligent hiring, training, and supervision of its employees.

*Spoliation Sanction*

¶5 Following the incident, Gallegos called the police, and a police officer (Officer) soon came to Brewski's to respond to the incident. Officer informed the manager at Brewski's (Manager) that Gallegos wished to bring legal action and gave him a case number. While there, Manager showed Officer security video footage (the Footage) of Gallegos's removal. Officer informed Manager that he needed a copy of the Footage and told Manager to make a copy and hold on to it. Officer's entire interaction, including viewing the Footage, was captured on video by

---

2. A "full nelson" is "a wrestling hold gained from behind an opponent by thrusting the arms under the opponent's arms and clasping the hands behind the opponent's head." *Full nelson*, Merriam-Webster, https://www.merriam-webster.com/dictionary/full%20nelson [https://perma.cc/7XTH-FEX5].

3. Gallegos voluntarily dismissed Harwood Properties, LLC and obtained a default judgment against One Commerce Street. *See Gallegos v. One Com. St., LLC*, 2025 UT App 196, ¶¶ 1, 5 n.2, 585 P.3d 651.

Officer's body camera.[4] A few days later, Gallegos sent certified letters to Brewski's and its owner, Heidi Harwood, requesting a copy of the Footage. Brewski's employees signed for receipt of these letters.

¶6 Officer returned to Brewski's within a week of his initial visit, and Manager informed him that a copy of the Footage had been made and was with Harwood. However, Officer was unable to get in contact with Harwood, and no copy of the Footage was ever provided to him or Gallegos. Brewski's security system automatically loops over itself approximately every ten days, so the Footage was lost and could not be recovered.

¶7 Gallegos filed a motion for sanctions related to Brewski's spoliation of the Footage. The district court found that Brewski's had a duty to preserve the Footage and that it violated that duty. Additionally, the court found that the body camera video of the Footage was "not equal in quality" to the Footage. As a result, the court sanctioned Brewski's with "an adverse inference instruction . . . that if the jury cannot determine from available evidence whether [Brewski's] was negligent, it must assume that the spoliated evidence would have been unfavorable to [Brewski's]."

*Exclusion of Gallegos's Expert*

¶8 During discovery, the court granted Gallegos's request for additional time to complete expert depositions and extended the deadline to March 3, 2022. Two days before the deadline, Brewski's deposed Gallegos's expert witness (Expert), who was designated to testify about "generally accepted security protocols" and opine that Bouncer "was negligent in his application of [the] procedures for physically removing [Gallegos] from the premises." Expert was unprepared for the deposition and could not answer even basic questions from

---

4. A copy of the body camera video is not in the record and, therefore, we have not been able to review it ourselves.

Brewski's counsel. Ninety minutes into the deposition, Gallegos's counsel "forced a break in an effort to rehabilitate [Expert's] testimony off the record," an action the district court later found to be "inappropriate[]." After resuming, Gallegos's counsel took another break before "abruptly and inappropriately end[ing] the deposition . . . despite the objection of" Brewski's counsel. Gallegos's counsel "indicated on the record . . . that [Expert] was 'not prepared to move forward with the remainder of the deposition because he ha[d]n't reviewed the materials.'" Two days later, Gallegos filed a motion for an extension of time to complete Expert's deposition, claiming that Expert had suffered a "memory blip." The court denied the motion.

¶9      Brewski's then filed a motion in limine to exclude Expert from testifying at trial based on the failure to complete expert depositions by the required deadline and the inappropriate behavior at the deposition by Expert and Gallegos's counsel. After a hearing, the court granted the motion and sanctioned Gallegos. The court pointed out that Gallegos was required to have Expert prepared at the time of the deposition and found that Expert was not prepared. Additionally, the court found Gallegos's counsel's decision to end the deposition was unilateral, made without seeking court approval, done over the objection of Brewski's counsel, and "not substantially justified." The court found the actions of Gallegos's counsel and Expert were "willful and intentional." The court also found that Brewski's was prejudiced as it was "unable to cross-examine [Expert]" at the deposition and therefore could not "effectively cross-examine" Expert at trial. The court determined that Gallegos was the disobedient party and concluded that "the sanction of exclusion [was] proportional to the sanctionable conduct." The court then precluded Expert from testifying at trial.[5]

---

5. This court denied Gallegos's petition for permission to appeal from the interlocutory order excluding Expert's testimony.

*Summary Judgment*

¶10 Following the district court's order excluding Expert's testimony, Brewski's filed a motion for summary judgment, arguing that without Expert, Gallegos could not establish either the proper standard of care or breach of that standard and thus could not prove any of his negligence claims. Gallegos opposed this motion on multiple grounds, including that the motion was untimely, no expert testimony was needed because the issue in the case was a simple "trip," and if expert testimony was needed, he could call his rebuttal security expert (Rebuttal Expert) in his case-in-chief.

¶11 The court acknowledged the untimely filing of Brewski's motion but concluded the circumstances giving rise to the motion—namely, the exclusion of Expert—arose after the deadline prescribed in rule 56(b) of the Utah Rules of Civil Procedure and thus warranted an extension of time. Addressing the merits of the motion, the court concluded that the central issue of the case was "what a reasonable bouncer should have done under the same or similar circumstances and whether [Bouncer] breached that standard." The court determined that "an average layperson would typically not know whether a bouncer can, or should, remove someone from the premises of the business" or "what level of force is reasonable under certain circumstances." Thus, the court concluded, "expert testimony [was] needed for [Gallegos] to establish the elements of negligence in this case." The court then denied Gallegos's request to use Rebuttal Expert in his case-in-chief to establish the standard of care and breach of that standard.

¶12 The court concluded Gallegos could not establish negligence without an expert witness to testify to the standard of care and to a breach of that standard. The court also concluded that without Expert's testimony on "what proper bouncer training is," Gallegos could not establish his claim of negligent hiring,

training, and supervision. The court then granted summary judgment to Brewski's on all of Gallegos's claims.

*The Appeals*

¶13    After the district court dismissed all of Gallegos's claims against Brewski's, Brewski's appealed the district court's imposition of the sanction for spoliation of evidence.[6] Gallegos then filed a cross-appeal raising numerous issues. We now address both appeals.

ISSUES AND STANDARDS OF REVIEW

¶14    Brewski's appeals the district court's imposition of a sanction against it for spoliation of evidence. "As a general rule, district courts are granted a great deal of deference in selecting discovery sanctions, and we overturn a sanction only in cases evidencing a clear abuse of discretion." *Yuanzong Fu v. Rhodes*, 2013 UT App 120, ¶ 8, 304 P.3d 80 (cleaned up), *aff'd*, 2015 UT 59, 355 P.3d 995.

¶15    In his cross-appeal, Gallegos raises numerous issues for our review. First, Gallegos appeals the court's spoliation sanction against Brewski's as being too lenient. Second, Gallegos appeals the court's imposition of a sanction against him—exclusion of Expert—for discovery violations. Again, we review discovery sanctions for "a clear abuse of discretion." *Id.* (cleaned up). "We

_____

6. Where the appellant obtained judgment in its favor, we would normally dismiss the appeal as presenting an insubstantial question because a ruling reversing a discovery sanction would not alter the favorable judgment. *See* Utah R. App. P. 10(a)(2) ("[T]he court, on its own motion, . . . may dismiss an appeal . . . if it plainly appears that no substantial question is presented."). But because Gallegos filed a timely cross-appeal, we review Brewski's appeal of the sanction order on the merits.

will find an abuse of discretion in a [district] court's choice of sanction only when there is either an erroneous conclusion of law or no evidentiary basis for the [district] court's ruling." *Hales v. Oldroyd*, 2000 UT App 75, ¶ 16, 999 P.2d 588 (cleaned up).

¶16 Finally, Gallegos challenges the grant of summary judgment to Brewski's on several grounds. "We review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions." *Gillmor v. Summit County*, 2010 UT 69, ¶ 16, 246 P.3d 102 (cleaned up).[7]

ANALYSIS

I. Spoliation Sanction

¶17 Both Brewski's and Gallegos argue the district court abused its discretion in entering an adverse jury instruction as a sanction for Brewski's spoliation of the Footage. Brewski's argues that no sanction was warranted, while Gallegos argues that the sanction was not severe enough and that the district court should have "deem[ed] liability admitted." We disagree with both parties and conclude the district court did not clearly abuse its discretion.

¶18 Rule 37(e) of the Utah Rules of Civil Procedure permits a court to impose sanctions "if a party destroys, conceals, alters, tampers with, or fails to preserve . . . electronic data, or other evidence in violation of a duty." To impose sanctions under this

---

7. Gallegos also appeals the dismissal of his request for costs related to his motion to exclude witnesses. However, this issue was inadequately briefed, and we therefore decline to address the merits of the argument. *See Seamons v. Brandley*, 2011 UT App 434, ¶¶ 5–6, 268 P.3d 195 (explaining that an issue is inadequately briefed "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court" and, as a result, declining to address such issues).

rule, "the court must first find that the custodial party was under a duty to preserve evidence, and that it violated that duty. At that point, the court has the discretion to impose sanctions for spoliation." *Diversified Concepts LLC v. Koford*, 2021 UT App 71, ¶ 19, 495 P.3d 755.

A.     Duty to Preserve Evidence

¶19     "The duty to preserve evidence begins when litigation is pending or reasonably foreseeable. This is an objective standard, asking . . . whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Id.* ¶ 21 (cleaned up). Here, Officer informed Manager of Gallegos's intent to pursue legal action and that the police had assigned a case number to the incident. Officer also specifically requested a copy of the Footage on the night of the incident. Additionally, within a week of the incident, Gallegos requested a copy of the Footage from Brewski's via two certified letters that were signed for by Brewski's employees.[8] Brewski's argues that Manager did not understand Officer's request for a copy of the Footage and that the letters were not received by the relevant people. But the existence of a duty is judged by an objective standard, not Manager's subjective belief. A "reasonable party in the same factual circumstances would have reasonably foreseen litigation," *id.* (cleaned up), and understood that it needed to preserve the Footage after requests from both a police officer and the injured party. Thus, the district court did not abuse its discretion in finding that Brewski's had a duty to preserve the Footage.

---

8. Brewski's argues the district court erred in relying on these letters as Gallegos did not produce them in discovery. However, because the letters were not going to be offered in Gallegos's case-in-chief, he was not required to produce them as part of his initial disclosures. *See* Utah R. Civ. P. 26(a)(1)(B).

B.    Electronic Information Systems

¶20    Brewski's argues it should not have been sanctioned under rule 37(e) because the Footage was "electronically [stored] information lost as a result of the routine, good-faith operation of an electronic information system" and the district court did not find the required "exceptional circumstances." (Quoting Utah R. Civ. P. 37(e).) While there was no dispute that the Footage was lost because the security system automatically looped over itself, Brewski's did not meet the rule's requirement of "good-faith operation." Utah R. Civ. P. 37(e). The district court specifically found that Brewski's conduct in failing to preserve the Footage was "reckless." And reckless conduct does not qualify as the "good-faith operation of an electronic information system" as required by rule 37(e). *Id.* Thus, the district court was not required to find "exceptional circumstances" before imposing sanctions against Brewski's. *Id.* Accordingly, the district court did not clearly abuse its discretion in imposing a sanction under rule 37(e).

C.    Choice of Sanction

¶21    "As with all discovery violations, the district court has broad discretion to choose the sanction it deems appropriate." *Diversified Concepts*, 2021 UT App 71, ¶ 35. Available sanctions for spoliation include any of the following: "deeming facts established, limiting a party's argument, prohibiting evidence, imposing a stay until compliance happens, dismissing an action (in part or in full), striking pleadings, entering default judgment, imposing attorney fees, and giving adverse jury instructions." *Gallegos v. One Com. St., LLC*, 2025 UT App 196, ¶ 12, 585 P.3d 651 (citing Utah R. Civ. P. 37(b)). The purpose of spoliation sanctions is "to punish and deter future violations" from the offending party and to "even[] the playing field, or rectify[] the prejudice caused by the spoliation" for the injured party. *Diversified Concepts*, 2021 UT App 71, ¶ 36 (cleaned up).

¶22    In determining which sanction to impose, courts are to consider (1) the fault of the offending party, (2) the prejudice suffered by the opposing party, and (3) whether a lesser sanction will be sufficient to fulfill the purposes of sanctioning the conduct in question. *See id.* Here, the district court found Brewski's at fault for failing to preserve the Footage. Next, the court found that, although the Footage was partially recorded on Officer's body camera, Gallegos was prejudiced because the "secondhand view" on Officer's body camera was "not equal in quality" to the Footage. Finally, the court considered imposing a lesser sanction against Brewski's and ultimately did so. The court first considered Gallegos's request for a directed verdict against Brewski's on liability, but it concluded that such a sanction was "not warranted under the circumstances." Instead, it determined that "an instruction with a negative inference [wa]s warranted, given that there [wa]s some evidence that remain[ed]." Thus, the court imposed an adverse jury instruction that "if the jury cannot determine from available evidence whether [Brewski's] was negligent, it must assume that the spoliated evidence would have been unfavorable to [Brewski's]."

¶23    The district court grounded its decision in the evidence, appropriately weighed the relevant factors, and fashioned a proportionate sanction to cure the prejudice. Accordingly, the court's decision to sanction Brewski's for the spoliation of the Footage by imposing an adverse jury instruction was not a clear abuse of discretion.[9]

---

9. Brewski's also argues the district court should have addressed whether, during trial, it would be permitted to try to rebut the negative inference permitted by the instruction. However, this issue is not preserved, and we therefore decline to address it. *See True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶¶ 29–31, 427 P.3d 338.

## II. Exclusion of Expert

¶24 Gallegos challenges the district court's exclusion of Expert's testimony as a sanction under rule 37(b) of the Utah Rules of Civil Procedure. Under this rule, "[u]nless the court finds that the failure was substantially justified, the court, upon motion, may impose appropriate sanctions for the failure to follow its orders." Utah R. Civ. P. 37(b). Available sanctions for this disobedience are the same as discussed in paragraph 21. Gallegos acknowledges that he failed to complete all expert depositions by the date ordered by the court, but he argues that the court nonetheless abused its discretion by sanctioning him for "pausing" Expert's deposition and by not allowing his request for a continuance to complete Expert's deposition. We disagree.

¶25 The behavior of both Expert and Gallegos's counsel at the deposition was improper and deliberate. First, Expert did not have a mere "memory blip" during the deposition. The district court found that although Gallegos was required to have Expert prepared to answer questions at the time of his deposition, Expert "was not prepared." *See* Utah R. Civ. P. 26 advisory committee's notes to 2011 amendments ("[T]he expert is expected to be fully prepared on all aspects of his/her trial testimony at the time of the deposition and may not leave the door open for additional testimony by qualifying answers to deposition questions."). Second, Gallegos's counsel compounded the problem by "inappropriately forc[ing] a break in an effort to rehabilitate [Expert's] testimony off the record" before finally "abruptly and inappropriately end[ing] the deposition." The district court determined that "[r]ather than allow the defense to question the unprepared [Expert], [Gallegos's counsel] instead chose to unilaterally end the deposition hoping the court would permit [Expert] more time to prepare himself." The court also found that Gallegos's counsel's decision to "walk out of [Expert]'s deposition before defense counsel could conclude it was not substantially

justified." Additionally, the court found this behavior by both Gallegos's counsel and Expert was "willful and intentional."

¶26 Moreover, the district court concluded Brewski's was prejudiced by the behavior of Expert and Gallegos's counsel. Specifically, the court found that Brewski's was "unable to cross-examine [Expert] to inquire about his opinions and the bases for his opinions" so it could effectively cross-examine Expert at trial and that the prejudice could not be reversed. The court then concluded the "sanction of exclusion" was "fair, reasonable, . . . specifically targeted at the discovery abuse" that occurred at Expert's deposition, and "proportional to the sanctionable conduct."

¶27 We have emphasized that "although some of Rule 37's discovery sanctions are harsh and extreme, Rule 37 grants the [district] court broad discretion to impose them . . . and we will not interfere with the [district] court's imposition of discovery sanctions . . . , including its choice of sanctions, unless [an appellant] clearly shows the [district] court abused its discretion." *Wright v. Wright*, 941 P.2d 646, 650 (Utah Ct. App. 1997) (cleaned up). On the facts before us—Expert appearing at his deposition unprepared and the "willful and intentional" misbehavior by Gallegos's counsel at the deposition—Gallegos has not demonstrated that the district court's decision to sanction him by excluding Expert's testimony from trial was a clear abuse of discretion.[10]

---

10. It may also have been appropriate for the court to impose sanctions under Utah Rule of Civil Procedure 37(d) because appearing at a deposition as unprepared as Expert did is tantamount to not appearing at all. *See* Utah R. Civ. P. 37(d) (stating that if a witness fails to appear for a deposition, the other party may move for sanctions under rule 37(b)); *see also Black Horse*
(continued…)

### III. Summary Judgment

¶28    Gallegos challenges the district court's grant of summary judgment to Brewski's on two grounds: (A) he argues he was not required to produce expert testimony on the standard of care and breach elements of either his vicarious liability claim for negligence or his direct liability claim for negligent hiring, training, and supervision and (B) he argues the motion should have been denied as untimely. We address each argument in turn.

### A.    Necessity of Expert Testimony

¶29    To prove his two claims of negligence, Gallegos "must establish four elements: the existence of a duty, a breach of the standard of care, causation, and damages." *Jensen v. Walgreen Co.*, 2025 UT 41, ¶ 17, 579 P.3d 305. With respect to the first element, "in cases where the standard of care is usually not within the common knowledge of the lay juror, testimony from relevant experts is generally required." *Callister v. Snowbird Corp.*, 2014 UT App 243, ¶ 12, 337 P.3d 1044 (cleaned up). This expert testimony requirement "ensures that factfinders have adequate knowledge upon which to base their decisions." *Ruiz v. Killebrew*, 2020 UT 6, ¶ 11, 459 P.3d 1005 (cleaned up). In short, "expert testimony is

---

*Lane Assocs., LP v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (stating that if a "witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it," and that "producing an unprepared witness is tantamount to a failure to appear" for a deposition and is "sanctionable under Rule 37(d)" (cleaned up)); *Eid v. Koninklijke Luchtvaart Maatschappij NV*, 310 F.R.D. 226, 228 (S.D.N.Y. 2015) (stating that courts may "treat the production of an unprepared . . . witness as tantamount to a failure to appear," as long as "the inadequacies in a deponent's testimony [are] egregious and not merely lacking in desired specificity in discrete areas" (cleaned up)).

necessary in cases where the jury would be unable to determine the applicable standard of care without resorting to speculation." *Callister*, 2014 UT App 243, ¶ 15. "An appellate court reviews a district court's conclusion that expert testimony is required for correctness." *Clifford P.D. Redekop Fam. LLC v. Utah County Real Est. LLC*, 2016 UT App 121, ¶ 10, 378 P.3d 109.

### 1.   Negligence Claim—Bouncer's Conduct[11]

¶30   Gallegos had designated Expert to testify about "generally accepted security protocols" and to opine that Bouncer "was negligent in his application of [the] procedures for physically removing [Gallegos] from the premises." After the district court excluded Expert as a sanction for the inappropriate behavior at Expert's deposition, *see supra* Part II, Brewski's moved for summary judgment. It asserted that Gallegos could not meet his burden of proof on his vicarious liability negligence claim against Brewski's based on Bouncer's conduct without expert testimony to establish the appropriate standard of care for what a bouncer "should or should not do." In opposing the motion for summary judgment, Gallegos argued that no expert witness testimony was required because "the act of negligence alleged by [Gallegos] is that [Bouncer] caused [Gallegos] to trip" and a jury could "understand it is unreasonable to trip someone."

¶31   The district court agreed with Brewski's that Gallegos was required to present expert testimony to establish "what a reasonable bouncer should have done under the . . . circumstances and whether [Bouncer] breached that standard." In reaching that conclusion, the district court determined "an average layperson would typically not know whether a bouncer can, or should, remove someone from the premises of the business," nor would they know "what level of force is reasonable," know "when a

---

11. Part III.A.1. is the dissenting opinion of Judge Oliver. The majority opinion on this issue appears in paragraphs 54–63.

bouncer should use only verbal warnings with an unruly patron," know "when physical force might be justified," or "understand proper holds and techniques to ensure minimal injuries to a person being removed from the premises."

¶32    On appeal, Gallegos asserts the district court erred in concluding he needed an expert witness on the standard of care and on breach of that standard because this case is simply a question of whether it was reasonable for Bouncer to "trip" Gallegos on his way out the door of Brewski's.[12] The essence of Gallegos's argument is that this case involves a "simple dispute" about "who stepped on whose foot," so a jury could easily decide whether Bouncer acted reasonably. I disagree.

¶33    "[I]n a typical negligence case we ask a jury of reasonable people to draw upon their collective expertise to conclude how a reasonable person would have acted in that circumstance." *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 57, 417 P.3d 95. Were this a simple physical altercation between bar patrons, "a jury of reasonable people [could] draw upon their collective expertise to conclude how a reasonable person would have acted in that circumstance." *Duennebeil v. Paramount Fin. Servs., Inc.*, 2025 UT App 141, ¶ 10, 579 P.3d 784 (cleaned up). But this is not such a simple case. The situation here involves a bouncer physically removing an unruly patron from a bar using specialized techniques. This is neither a "professional task [that] is so common [n]or [an] alleged breach

---

12. This was not Gallegos's original theory of the case. He designated Expert to offer opinions on "generally accepted security protocols" and to testify that Bouncer "was negligent in his application of [the] procedures for physically removing [Gallegos] from the premises." It was not until after the district court excluded Expert's testimony and Brewski's moved for summary judgment that Gallegos shifted to his "tripping" theory of negligence.

[that] is so egregious that specialized knowledge is not required to conclude that the conduct fell below the applicable standard of care." *Id.* (cleaned up).

¶34 Indeed, the question of what a reasonable bouncer would do under the circumstances involves more than the final act in the process of physically removing an unruly bar patron; it includes numerous decisions along the way. Here, Bouncer made the decision to (1) intervene when Gallegos was speaking loudly to the bartender from his table, (2) physically intervene by walking over to the table and standing behind Gallegos, (3) remove Gallegos from Brewski's after observing his behavior toward the bartender, (4) use physical force by grabbing Gallegos from behind and carrying him to the exit, and (5) use specialized techniques—the full nelson—in accomplishing the removal. To determine whether Bouncer acted negligently in the final moment of removing Gallegos from the premises, the jury must consider the reasonableness of each step along the way because each action Bouncer took that night affected the next, all with a cumulative impact on the final moment.

¶35 According to the majority, the jury need only consider whether Bouncer acted reasonably when he "tripped" Gallegos. *See infra* ¶ 63. To do so, the majority acknowledges the district court "would of course need to strictly police Gallegos's presentation, so as to prevent Gallegos . . . from introducing any evidence or argument about security protocols" or similar allegations. *See infra* note 15. While I have the utmost confidence in our district court bench, this is a task that cannot so easily be accomplished. In the moment that Bouncer allegedly tripped Gallegos at the exit, Bouncer was holding Gallegos in a full nelson. And Bouncer's decision to use this technique would certainly affect the jury's assessment of his reasonableness. After all, if one person has physical control of the other person, their relative physical positions would unquestionably affect the determination of whether one of them acted negligently. Thus, the jury cannot

determine whether Bouncer acted reasonably when he allegedly "tripped" Gallegos in the exit without also determining whether it was reasonable for Bouncer to have placed Gallegos in a full nelson headlock beforehand as the two actions are inextricably intertwined, just like the arms of Bouncer and Gallegos in that moment. So, for the jury to determine who tripped whom at the exit, the jury necessarily would have to consider the reasonableness of Bouncer's actions leading up to that last moment in an interaction that began minutes before and in a different part of the bar.

¶36 Put simply, Bouncer removing Gallegos from the bar involved a series of decisions and actions in a continuous event where each decision affected the next. Whether Bouncer acted reasonably in making each of these decisions—both individually and collectively—"is not a question that a lay person can answer." *Clifford P.D. Redekop Fam. LLC v. Utah County Real Est. LLC*, 2016 UT App 121, ¶ 20, 378 P.3d 109; *see also id.* (holding expert testimony was required for the question of the correct square footage calculation in a commercial real estate dispute "even though [lay] persons would likely be able, without an expert's help, to find a tape measure and a friend and measure the square footage of their own living room"). Without expert testimony, jurors would be "left to their own devices, [and] would be forced to speculate about how a reasonable [bouncer] would act, and about whether [Bouncer] failed to conform to that standard" in his series of interactions with Gallegos. *Jenkins v. Jordan Valley Water Conservancy Dist.*, 2013 UT 59, ¶ 21, 321 P.3d 1049; *see also id.* (holding expert testimony was required to establish the standard of care for replacing broken pipe). And jurors are not permitted to engage in such speculation "on matters of duty, breach, or otherwise." *Id.*

¶37 The majority relies on our court's decision in *Collins v. Utah State Developmental Center*, to support its conclusion that an expert is not required for Gallegos's "tripping" theory. 1999 UT App 336,

992 P.2d 492; s*ee infra* ¶¶ 57–59. But *Collins* involved a very different type of activity. In *Collins*, the guardian of an adult with intellectual disabilities sued the care center where she lived for negligence, asserting that the center acted negligently when it failed to protect her "from a swing injury." 1999 UT App 336, ¶¶ 4, 8. The guardian argued that the center "was negligent in failing to take the necessary safety precautions for this very common recreational activity." *Id.* ¶ 9. Here, Gallegos argues that Bouncer was negligent in the course of his employment at Brewski's for "tripping" him as Bouncer was removing him from the premises because he was an unruly patron. In contrast to playing on swings—an admittedly common activity that most people have enjoyed at some point in their lives—very few people have removed an unruly patron from the premises of a bar while holding the person in a full nelson or have themselves been the person removed under those same circumstances. The two activities are simply not comparable. Thus, I do not find *Collins* instructive here.

¶38    I would affirm the district court's determination that the question of whether Bouncer acted reasonably in allegedly "tripping" Gallegos while removing him from the bar is not within the knowledge and experience of a lay juror and requires expert testimony.

2.    Negligent Hiring, Training, and Supervision Claim

¶39    On Gallegos's direct liability claim that Brewski's was negligent in the hiring, training, and supervision of its employees, the district court also concluded that Gallegos was required to produce expert testimony "because that knowledge is beyond the training and experience of an average layperson." This conclusion was in error.

¶40    Our supreme court has held that the "question of what a reasonable person would do in performing background checks in hiring and in training and supervising employees is one

permissibly resolved on the basis of the knowledge and experience of lay persons." *Graves v. N. E. Servs., Inc.*, 2015 UT 28, ¶ 41, 345 P.3d 619. Therefore, we must reverse the grant of summary judgment to Brewski's on Gallegos's claim of negligent hiring, training, and supervision.

B.     Use of Rebuttal Expert in Case-in-Chief[13]

¶41     Gallegos argues that once the district court ruled he was required to produce expert testimony to support his negligence claim, it should have granted his request to use Rebuttal Expert in his case-in-chief to meet that requirement. Specifically, Gallegos argues that rule 26(a)(4)(C)(iii) of the Utah Rules of Civil Procedure gives courts the discretion to allow an expert designated as a rebuttal witness to testify in the case-in-chief, and that the court here abused its discretion by not doing so. We disagree that the court abused its discretion here.

¶42     First, the text of rule 26(a)(4)(C)(iii) states, "The court may *preclude* an expert disclosed only as a rebuttal expert from testifying in the case in chief." Utah R. Civ. P. 26(a)(4)(C)(iii) (emphasis added). It does not specifically provide for the accommodation that Gallegos requested, namely that the court *permit* Rebuttal Expert to testify in his case-in-chief. For purposes of our analysis, however, we assume without deciding that where the district court may decide to preclude a rebuttal expert from testifying in the case-in-chief, it may also decide not to preclude such testimony.

---

13. While the majority believes this issue is moot because Gallegos asked to use Rebuttal Expert in his case-in-chief only as an alternative if the district court (or this court) determined that he was required to produce expert testimony to prove his case, Judge Harris's dissent takes a contrary view. *See infra* ¶ 64. We therefore address Gallegos's challenge to the district court's denial of his request.

¶43 Second, the text in rule 26(a)(4)(C)(iii) is permissive; it expressly provides that the court "*may* preclude an expert disclosed only as a rebuttal expert from testifying in the case in chief." *Id.* (emphasis added). The use of the "word 'may' is commonly understood as being one that grants discretionary power to a court." *North Fork Meadows Owners Ass'n, Inc. v. Dove*, 2023 UT App 107, ¶ 19, 537 P.3d 258 (cleaned up). Moreover, a court's decision in managing discovery is "a discretionary call, reviewed only for abuse of discretion." *Berger v. Ogden Reg'l Med. Ctr.*, 2020 UT App 85, ¶ 33, 469 P.3d 1127 (cleaned up).

¶44 Here, the district court concluded that allowing Rebuttal Expert to testify in Gallegos's case-in-chief was akin to reopening discovery long after it had closed and after the trial date had been set. It noted that while Brewski's had deposed Rebuttal Expert, it had done so with the expectation that the testimony would be presented only in rebuttal to its own expert witness's testimony. Brewski's did not take the deposition of Rebuttal Expert with the understanding that he would testify in the case-in-chief, and Brewski's was therefore only "prepared to cross-examine [Rebuttal Expert] as a rebuttal witness."

¶45 The dissent finds the district court's reasons for denying Gallegos's request "unpersuasive." *See infra* ¶ 65. We disagree. Here, Brewski's elected to depose Rebuttal Expert and did so in good faith, believing that Rebuttal Expert was just that, a rebuttal expert who may or may not testify at trial. Brewski's also retained its own expert witness to respond to Expert—not to respond to Rebuttal Expert—and disclosed their expert's opinions to counter Expert's. Thus, Brewski's—through no fault of its own—would have to respond at trial to Rebuttal Expert's opinions in Gallegos's case-in-chief without the benefit of having deposed Rebuttal Expert for that purpose and without the opportunity for its own expert to offer opinions in response. We think these reasons are well taken.

¶46 Additionally, Utah's appellate courts have repeatedly said that the question on appeal is not whether a different judge would have reached the same result as the district court but rather, whether the district court "articulated reasonable bases for its decision." *Berger*, 2020 UT App 85, ¶ 33; *see also State v. Cochran*, 2019 UT App 92, ¶ 12, 443 P.3d 1269 (holding that "[p]erhaps another judge might have granted" the motion but "that does not make it an abuse of discretion for the court to deny the motion"). Indeed, we have made clear that "so long as the district court could reasonably decide the question in the manner that it did, we will affirm even if we or another court might have made a different decision in the first instance." *England Logistics, Inc. v. Kelle's Transp. Serv., LLC*, 2024 UT App 137, ¶ 59, 559 P.3d 45 (cleaned up). And even where "we think the [district] judge made the wrong call," we will affirm if the decision was "a discretionary . . . one that was within the broad range of discretion entrusted" to the district court. *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2015 UT App 261, ¶ 24, 361 P.3d 703 (Orme, J., concurring).

¶47 So, regardless of whether any of us would have made the same decision the district court did here, the court provided reasonable bases for its decision and acted within its broad discretion in precluding Rebuttal Expert from testifying in Gallegos's case-in-chief.

C.     Untimely Summary Judgment Motion

¶48 Finally, Gallegos argues the district court erred in considering Brewski's motion for summary judgment because it was filed "more than eight months past the end of all discovery." Rule 56(b) of the Utah Rules of Civil Procedure provides that "[u]nless the court orders otherwise, a party may file a motion for summary judgment at any time no later than 28 days after the close of all discovery." The pertinent language here is "[u]nless

the court orders otherwise." *Id.* This language plainly allows courts discretion to permit motions outside of this timing.

¶49 The district court addressed the untimely nature of the summary judgment motion in its order. Specifically, the court concluded that the basis for the summary judgment (the exclusion of Expert) did not occur until long after the close of discovery so it was not possible for Brewski's to have filed the motion in compliance with rule 56(b). Additionally, the court found that Gallegos's petition for an interlocutory appeal of the sanction excluding Expert—which was denied—contributed to the lateness of the summary judgment motion. We see no error in the district court's application of rule 56(b). The facts giving rise to the motion for summary judgment arose after the deadline set forth in rule 56(b). And the rule expressly permits the district court to allow motions for summary judgment after the deadline. *Id.* Accordingly, we affirm the district court's decision to consider Brewski's motion for summary judgment.

## CONCLUSION

¶50 We affirm the district court's imposition of sanctions against Brewski's for the spoliation of the Footage and against Gallegos for failing to timely complete Expert's deposition. We affirm the district court's decision to allow the untimely summary judgment motion. We reverse the grant of summary judgment on Gallegos's negligent hiring, training, and supervision claim. And, as explained in a separate opinion below, a majority reverses the grant of summary judgment on Gallegos's negligence claim, concluding that expert testimony is not required. We thus remand this case for further proceedings in accordance with the controlling portions of this opinion and the separate opinion.

———————

HARRIS, Judge (concurring in part, authoring the Opinion of the Court as to the issue in Part III.A.1., which Orme, J., joined, and dissenting as to Part III.B.):

¶51     I join Parts I and II of the lead opinion in full. I agree that the district court did not abuse its discretion in sanctioning Brewski's with a negative inference instruction. And I agree that—given the truly remarkable behavior by Expert and Gallegos's counsel at the scheduled deposition—the court did not abuse its discretion by forbidding Expert from testifying at trial.

¶52     Furthermore, I join Parts III.A.2 and III.C in full. I agree that, pursuant to *Graves v. North Eastern Services, Inc.*, 2015 UT 28, 345 P.3d 619, expert testimony is not required in order to support Gallegos's direct liability claim for negligent hiring. And I agree that the court did not abuse its discretion in overruling Gallegos's timeliness-based objection to the court's consideration of Brewski's summary judgment motion.

¶53     I part ways with the lead opinion in only two respects. First, Judge Orme and I disagree with the lead opinion's analysis in Part III.A.1 because, in our view, expert testimony is not required in order to support Gallegos's now-narrowed vicarious liability negligence claim. And second, I disagree with the lead opinion's analysis in Part III.B because, in my view, the district court should have allowed Gallegos the opportunity to prove his case-in-chief through testimony from Rebuttal Expert, and the court should afford Gallegos that same opportunity—if requested—in any trial that takes place on remand. I discuss these two issues in turn.

### I. Expert Testimony Regarding Gallegos's
### Narrowed Vicarious Liability Claim[14]

¶54    The lead opinion correctly sets forth the legal standard applicable in this situation: "In cases where the standard of care is usually not within the common knowledge of the lay juror, testimony from relevant experts is generally required." *Callister v. Snowbird Corp.*, 2014 UT App 243, ¶ 12, 337 P.3d 1044 (cleaned up); *see supra* ¶ 29. And we agree with the lead opinion that, as Gallegos described the gravamen of his vicarious liability claim prior to the district court's order excluding Expert, expert testimony would have been required to prove significant parts of it. Indeed, in his designation of Expert, Gallegos indicated that his case depended, in large part, on proving that "there are generally accepted security protocols" that businesses must follow and that employees of Brewski's had "failed to follow the proper protocols." As Gallegos described at least that part of his case, it depended on evidence—namely, the existence and breach of "generally accepted security protocols"—that are not within the common knowledge of lay jurors. We therefore agree that after the district court excluded Expert's testimony from trial, Gallegos had no way to prove the part of his case-in-chief that depended upon demonstrating the existence and breach of such security protocols. And we also agree that, as to that discrete portion of his vicarious liability claim, summary judgment in Brewski's favor was appropriate once Expert was excluded (assuming, for purposes of this part of the discussion, that either (a) Rebuttal Expert remains excluded from testifying in Gallegos's case-in-chief or (b) Rebuttal Expert doesn't have anything to say about security protocols in any event, *see infra* Part II).

¶55    But in this case, as in many cases, there is more than one way to prove negligence; indeed, in response to Brewski's motion

---

14. Judge Orme joins this section of the separate opinion, and therefore this section represents the majority view of the court.

for summary judgment, Gallegos argued that his vicarious liability negligence claim was broader than just the "breach of protocols" argument and that he could still prove negligence even without discussing security protocols. At that point, Gallegos insisted that "the act of negligence alleged . . . [was] that [Brewski's] employee caused [Gallegos] to trip." And Gallegos argued that a plaintiff could prove up a case about negligent tripping without the necessity of presenting expert testimony.

¶56 We find this argument persuasive. We agree with Gallegos that expert testimony is not required to support a tort case about an allegedly negligent trip on the part of a bouncer at a bar. "Expert testimony is especially considered unnecessary, although helpful, in cases involving trades or professions that do not require a high degree of specialized knowledge, as opposed to trades or professions that do, such as medicine, architecture, and engineering." *Ortiz v. Geneva Rock Prods., Inc.*, 939 P.2d 1213, 1217 n.2 (Utah Ct. App. 1997); *see also Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29, ¶ 90, 513 P.3d 729 ("[E]xpert testimony is required only in cases where the average layperson lacks the technical or scientific knowledge to determine what a reasonable person would have done in the defendant's situation."). As long as the discussion isn't centered on a bouncer's compliance with "generally accepted security protocols," bouncers do not belong to the sort of specialized profession that generally requires expert testimony for evaluation of the reasonableness of their behavior; stated another way, evaluation of a bouncer's behavior is generally not outside the ken of a layperson in the same way evaluation of a doctor's or engineer's behavior would be. While we are unaware of any caselaw specific to bouncers in this context, analogous cases suggest that expert testimony is not required for a jury to be able to evaluate the reasonableness of a bouncer's alleged trip of a patron. *See, e.g.*, *Smith*, 2022 UT 29, ¶ 92 (holding that the jury did not "need[] the help of expert testimony to determine what a reasonable person should have done in response to a mandatory stop-sale order"); *Graves v. North Eastern*

*Servs., Inc.*, 2015 UT 28, ¶ 41, 345 P.3d 619 ("The question of what a reasonable person would do in performing background checks in hiring and in training and supervising employees is one permissibly resolved on the basis of the knowledge and experience of lay persons."); *Collins v. Utah State Developmental Ctr.*, 1999 UT App 336, ¶¶ 2–10, 992 P.2d 492 (holding that no expert was required for a jury to be able to evaluate whether an employee of a group home was negligent in allowing a resident with an intellectual disability to use a swing).

¶57    *Collins* is particularly instructive here. In that case, a woman with an intellectual disability was residing at "an intermediate care facility" for individuals with such disabilities. *Collins*, 1999 UT App 336, ¶ 2. One day, the resident "joined seven other residents outside to play under the supervision of two staff members." *Id.* ¶ 3. While outside, the resident "went to the swings and began swinging," but she later "fell from the swing and was seriously injured." *Id.* The resident's guardian sued the care facility for negligence. *See id.* ¶ 4. The complaint invoked the Utah Health Care Malpractice Act, "presumably because the [facility was] a health care provider covered by the Act." *Id.* At trial, the facility "filed a motion in limine seeking to exclude the testimony of [the plaintiffs'] designated expert witness, . . . who was prepared to testify regarding the standard of care owed to [the resident] and a breach of that standard" of care. *Id.* The trial court granted that motion and later directed a verdict in the facility's favor because, in "the absence of expert testimony, [the plaintiffs] did not establish the applicable standard of care and a breach thereof." *Id.*

¶58    On appeal, this court reversed. *See id.* ¶ 13. We noted that, to the extent that the plaintiff was assailing the treatment team's plan for the resident, expert testimony may well have been required. *See id.* ¶¶ 3, 9. But instead, this court appropriately focused on the plaintiff's "simpl[e]" contention that the facility "was negligent in failing to take the necessary safety precautions"

for swinging in the yard, which we referred to as a "very common recreational activity." *Id.* ¶ 9. We stated that, while the plaintiff "filed her claim under the Malpractice Act, it [was] clear" from her allegations that her case "was one of simple negligence," asserting merely that the facility's employees had acted negligently by, for instance, "placing [the resident] on a swing which did not contain adequate safety devices" and by "failing to adequately supervise" the resident. *Id.* Based on these facts, we held that the plaintiff "did not need expert testimony to establish the appropriate standard of care and any breach thereof," because "[m]ost jurors could easily ascertain the standard of care owed to [an individual with an intellectual disability] when supervising her on a swing." *Id.* ¶¶ 10–11.

¶59   Similarly here, while an expert witness would have been required to support Gallegos's negligence claim as it concerned the breach of generally accepted security protocols, no such witness is required to support Gallegos's negligence claim as it concerns the allegation that a bouncer at Brewski's negligently tripped him as the bouncer was removing him from the premises.

¶60   The lead opinion disagrees, on two principal grounds. First, the lead opinion resists Gallegos's post-exclusion characterization of his case as being limited to a negligent trip, offering its view that "this is not such a simple case." *See supra* ¶ 33. But Gallegos is the master of his case, and he gets to describe it however he wants to. To be sure, now that Expert has been excluded, Gallegos apparently no longer has the evidence to support a negligence claim grounded in breach of specific security protocols. But if he wants to attempt to proceed with a narrower case, he is entitled to do so. It is not our place to countermand Gallegos's own assertion regarding what his case is now about. Both this court, as well as the district court, must evaluate Gallegos's case based on his description and characterization of how he intends to prove negligence, and we think the lead

opinion oversteps by inserting its own characterization of Gallegos's case in place of Gallegos's.

¶61 Second, the lead opinion seems to view pejoratively Gallegos's post-exclusion shift in the characterization of his case, observing that the "trip" theory "was not Gallegos's original theory of the case" and that "[i]t was not until after the district court excluded Expert's testimony and Brewski's moved for summary judgment that Gallegos shifted to his 'tripping' theory of negligence." *Supra* note 12. But even taking the lead opinion's factual recitation as accurate—Gallegos resists it—we fail to see any reason for holding this against Gallegos. Attorneys and litigants are entitled to react to adverse evidentiary rulings, including by adapting their legal theories to fit the evidence that the court will allow. In theory, there is nothing nefarious about this practice. And in this case, Brewski's makes no argument that it was unfairly surprised or prejudiced by the particular change in theory Gallegos attempts to advance.

¶62 As noted, we agree that Expert and Gallegos's attorney acted poorly in connection with Expert's deposition, and that the district court did not abuse its discretion by excluding Expert from trial. And we also agree that—given the assumptions referred to earlier, *see supra* ¶ 54—the court's exclusion order must necessarily result in summary judgment in favor of Brewski's on Gallegos's negligence theory that was dependent upon proving a breach of specific security protocols. These are appropriate and significant penalties for the improper conduct.

¶63 But the district court went—and now the lead opinion would go—too far by imposing an additional penalty on Gallegos: forbidding him from advancing an alternative negligence theory that *isn't* dependent on expert testimony, from Expert or anyone else. In our view, the district court's ruling was unfairly punitive and unsupported by rule or caselaw and should therefore be

reversed. On remand, Gallegos should be allowed to proceed with the "negligent trip" version of his vicarious negligence claim.[15]

## II. Use of Rebuttal Expert as an Alternative[16]

¶64 Additionally, I disagree with the lead opinion's analysis in Part III.B, in which the majority affirms the district court's ruling forbidding Gallegos from using Rebuttal Expert in his case-in-chief. In my view, Gallegos should be allowed to present testimony from Rebuttal Expert during his case-in-chief if he wishes, so long as Rebuttal Expert doesn't stray from (or add to) the conclusions he offered in his deposition.

¶65 The district court issued an order precluding Gallegos from calling Rebuttal Expert as part of his case-in-chief, reasoning that allowing Rebuttal Expert "to be a case-in-chief witness now would essentially reopen discovery as [Brewski's] is prepared to cross-examine [Rebuttal Expert] as a rebuttal witness, but not as a case-in-chief witness." I find this reasoning unpersuasive.

¶66 As to the district court's first point, I don't see how allowing Rebuttal Expert to testify as a case-in-chief witness would "essentially reopen discovery." After Gallegos designated Rebuttal Expert as a rebuttal witness, Brewski's opted to depose Rebuttal Expert rather than ask for a report. And Brewski's took

---

15. In any such trial, the court would of course need to strictly police Gallegos's presentation, so as to prevent Gallegos—at least during his case-in-chief, as opposed to rebutting an argument Brewski's might make—from introducing any evidence or argument about security protocols (or other allegations that would be dependent on expert testimony). But district courts are certainly capable of enforcing such limits, and we have full confidence that such a trial could be fairly conducted.

16. This section of the separate opinion contains the views of Judge Harris alone and thus represents a dissenting opinion.

that deposition, availing itself of the opportunity to ask Rebuttal Expert about his opinions and the basis for them. Brewski's thus knows what Rebuttal Expert is prepared to testify about and is presumably fully prepared to examine him about those opinions.

¶67    By asking the court to allow Rebuttal Expert to testify in his case-in-chief, Gallegos was not—as I understand it—asking for permission to have Rebuttal Expert testify to anything new or different from what he had said at his deposition. And notably, at the district court level, Brewski's made no argument that Gallegos's request—to have Rebuttal Expert testify in his case-in-chief—would necessitate a second deposition of Rebuttal Expert or in any other way require the reopening of discovery. The district court appears to have come up with that argument entirely on its own.[17] And I see no support for it.

---

17. Nor did Brewski's argue, in its district court briefing, that it would somehow be unprepared to examine Rebuttal Expert were he to testify as a case-in-chief witness rather than as a rebuttal witness. The district court appears to have come up with *that* argument on its own too. Instead, the argument advanced by Brewski's at the district court level—which argument Brewski's continues to advance here on appeal—is that allowing Gallegos to substitute Rebuttal Expert for Expert, as a case-in-chief witness, would "completely obviate[]" the sanction imposed by the district court. But this argument wasn't accepted by the district court, presumably because the district court saw it as unpersuasive. After all, the sanction imposed by the district court for Expert's (and Gallegos's attorney's) bad behavior at the deposition was exclusion of *Expert*. That sanction still holds, even if Rebuttal Expert is allowed to replace Expert in Gallegos's case-in-chief. Indeed, it is worth pointing out that, on at least one occasion, our supreme court has deemed it an abuse of discretion for a district court to forbid a litigant from obtaining a replacement expert after

(continued…)

¶68 As for the district court's second point—that while Brewski's was prepared to cross-examine Rebuttal Expert "as a rebuttal witness," it was not prepared to do so "as a case-in-chief witness"—I must confess I don't understand what that means. Either you're prepared to cross-examine a witness about his or her opinions, or you aren't. As long as the witness's opinions don't change, an attorney's level of preparation should be entirely unaffected by whether a witness testifies at the beginning of the trial or at the end. There is no question that Brewski's had fully deposed Rebuttal Expert about his opinions and was fully prepared to cross-examine him on those opinions. Neither Brewski's nor the district court has explained how or why it matters to an attorney's preparation whether a witness testifies as a case-in-chief witness or a rebuttal witness. As Gallegos persuasively argues in his reply brief, "Brewski's has never identified any area of testimony that it would be unprepared for if [Rebuttal Expert] testified during Gallegos's case-in-chief."

¶69 I understand that district courts have discretion in making discovery orders such as this one. *See* Utah R. Civ. P. 26(a)(4)(C)(iii). But for such orders to pass abuse-of-discretion muster, there must be at least some sensible reason for them, whether articulated by the court or apparent from review of the record. *See Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 19, 243 P.3d 1275 ("[W]hen a district court does not provide any reasons for denying leave to amend, the denial is a per se abuse of discretion."); *cf. State v. Ruiz*, 2012 UT 29, ¶ 24, 282 P.3d 998 (noting that a district court's failure to "give reasons on the record for discretionary rulings" is excusable "where the basis for [the] ruling is apparent on the record"). Here, all the reasons articulated by Brewski's and the district court are entirely unpersuasive to me. And in the absence of any solid justification for the order, I

---

the original expert had been excluded. *See Coroles v. State*, 2015 UT 48, ¶¶ 25–29, 349 P.3d 739.

have little choice but to conclude that it exceeded the district court's discretion.

¶70    To be sure, if Gallegos were allowed to present testimony from Rebuttal Expert in his case-in-chief, the district court would need to ensure that Rebuttal Expert did not stray from the opinions he discussed in his deposition. And whether Rebuttal Expert's testimony alone (and without Expert's testimony about protocols) would be enough to support resurrection of Gallegos's "violation-of-protocols" theory is unclear to me; this issue has not been briefed by the parties. But these are issues that are well within the ken of the district court to handle. I simply see no reason why Gallegos, on remand, shouldn't be allowed to at least *try* to prove his case-in-chief through use of Rebuttal Expert's already-thoroughly-explored opinions.

_____